**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **BOBBY TATUM,** | ) | |
| **K69478,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-cv-1953-DWD** |
| | ) | |
| **JOHN BARWICK,** | ) | |
| **LT. RANSON,** | ) | |
| **JOHN/JANE DOE,** *healthcare admin.,* | ) | |
| **LATOYA HUGHES,** | ) | |
| **C/O SPENCER,** | ) | |
| **JOHN DOE,** *officers***,** | ) | |
| **JANE DOE,** *mental health nurse***,** | ) | |
| **JANE DOE,** *seg nurses***,** | ) | |
| **LT. LITTLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM & ORDER</u>

**DUGAN,  District Judge:**

Plaintiff Bobby Tatum, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  Plaintiff raises a variety of claims surrounding his alleged chronic knee issues and his need for a low bunk/low gallery permit.  Plaintiff's original complaint (Doc. 1) and amended complaint (Doc. 12) were dismissed for failure to state a claim, and he filed a timely second amended complaint.  The Second Amended Complaint (Doc. 15) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims.

*See* 28 U.S.C. § 1915A(a)-(b).   Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).  At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE SECOND AMENDED COMPLAINT

Plaintiff faults Defendants Barwick and Hughes for failing to accommodate his disability under the Americans with Disabilities Act and the Rehabilitation Act.  (Doc. 15 at 6).  He specifically alleges that when he was transferred to Pinckneyville in February of 2025, he had a low bunk permit related to a permanent knee injury, but it was not honored immediately upon his transfer.  (*Id.*).  He filed an emergency grievance, which Barwick deemed an emergency, but he ultimately did not get the relief he wanted from the grievance process.  He alleges that as part of the grievance process, Defendant Jane Doe healthcare administrator provided a false response, which he alleges prevented him from getting the low gallery housing placement he desired.  (*Id.* at 6-7).

Plaintiff also alleges that Defendant Barwick violated his rights under the Eighth Amendment because around the timeframe of the low bunk issue, Pinckneyville lacked a medical provider.  (*Id.* at 7).

Plaintiff goes on to allege that on June 25, 2025, Defendants Ranson, Spencer, and John Doe officers used excessive force, failed to protect him, denied him healthcare, and retaliated.  (*Id.* at 7).  Specifically, he claims he was moved to a cell with a top bunk, and

despite being shown his old permit, Defendant Ranson told him to get in the cell and mount the bunk. (*Id.* at 8). Plaintiff alleges he fell and was seriously injured. (*Id.*). Ranson took him to the medical unit where he received some care, was scheduled for an appointment, and was given a low bunk/gallery permit, but Ranson allegedly took the permit. Plaintiff alleges in doing so, Ranson mentioned conversations with friends at other prisons against whom Plaintiff had filed lawsuits or grievances and Ranson also mentioned that Plaintiff was a child rapist and snitch. (*Id.* at 8-9).

Plaintiff claims Ranson then commanded him out of a wheelchair and forced him to limp to the cellhouse. (*Id.* at 9). He alleges that Ranson again ordered him to the top bunk, and summoned Defendants Spencer and John Doe officers. Plaintiff claims Ranson sprayed him directly in the face with mace for no reason in the presence of others and left him on the hot ground for at least 20 minutes. He also alleges Ranson pushed him head first into doors and obstacles, causing him to bust his face and head open. (*Id.*). Ranson allegedly directed Spencer and the John Does to handcuff Plaintiff, and during the encounter the handcuffs were tightened, squeezed, and bent, causing damage to Plaintiff's wrists. Ranson then produced a wheelchair and directed John Doe officers to give Plaintiff a segregation ride. (*Id.*).

Plaintiff alleges that John Doe officers wheeled him throughout the prison grounds with the rubber wheels of the wheelchair causing severe damage to his elbows and forearms. (*Id.* at 10). He alleges Ranson and the John Doe officers saw that he was being injured, but laughed and continued. Plaintiff claims that at the six house he saw a Defendant Jane Doe mental health nurse and another Jane Doe seg nurse, as well as

Ranson, Lt. Little, and other officers, but he was denied care for his injuries despite many pleas for help. (*Id.*). Plaintiff alleges the Jane Doe nurses fabricated reports to deny medical treatment. Plaintiff claims he was placed in a crazy cell for days to cover up the excessive force. He alleges that the Jane Doe nurses would come to see if his injuries had healed yet, but they did not provide care. (*Id.*). Plaintiff further alleges that Ranson falsified a disciplinary report about the incident and Lt. Little improperly found him guilty and denied due process for the discipline. (*Id.*).

As relief, Plaintiff seeks monetary compensation, low bunk/low gallery permits, and a prison transfer. (Doc. 15 at 11).

Based on the allegations in the Second Amended Complaint the Court designates the following counts:

**Claim 1:** **Eighth Amendment or ADA/RA claim against Defendants Barwick, Hughes, and Jane Doe healthcare administrator related to Plaintiff's attempt to secure medical permits in March of 2025;**

**Claim 2:** **Eighth Amendment excessive force or failure to intervene claim against Defendants Ranson, Spencer, and Lt. Little for the alleged events on June 25, 2025;**

**Claim 3:** **Eighth Amendment deliberate indifference to medical needs claim against Defendants Ranson, Lt. Little, Jane Doe seg nurses and Jane Doe mental health nurse for allegedly refusing treatment for Plaintiff's injuries on June 25, 2025;**

**Claim 4:** **Fourteenth Amendment due process claim against Defendants Ranson and Lt. Little for alleged false discipline linked to the June 25, 2025, incidents.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)](#) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

As a preliminary matter, the Court acknowledges that Plaintiff included mentions of retaliation throughout the second amended complaint, but the allegations have not materially changed from those analyzed in the first two orders of review (Docs. 11, 14), so they will not be discussed further here.

Plaintiff faults Defendants Barwick, Hughes, and John/Jane Doe healthcare administrator for failing to provide a low bunk/low gallery permit, as he believes was appropriate under the Americans with Disabilities Act or Rehabilitation Act. Under the ADA, "no qualified individual with a disability shall, because of that disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132 (2006). The RA likewise prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e. The analysis under the ADA and the RA is the same, except that the RA includes as an additional requirement, the receipt of federal funds, which all states accept for their prisons. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (*citing* 29 U.S.C. § 705(2)(B)). Discrimination under both statutes includes the failure to

accommodate a disability. *Id.* at 672 (citation omitted). For purposes of an ADA or RA claim, Plaintiff has not alleged how his knee issues prevented him from accessing programs, services, or activities at the prison, and thus he has not pled an adequate claim.

To the extent that he alleges Barwick, Hughes, or John/Jane Doe healthcare administrator were deliberately indifferent to his medical needs, the Court does not find any such assertion plausible. Plaintiff's complaint and amended complaint were accompanied by copies of portions of his March 3, 2025, grievance about accommodations. (Doc. 1 at 10; Doc. 12 at 9). The excerpts reflect that prison staff did not believe Plaintiff possessed a low bunk permit, but directed him as to how he could access healthcare services to receive a determination on needed permits. As the Court previously explained, the administrators discharged their duty to investigate the issue posed in his grievance by expediting review of the issue and deferring to treating providers who could further evaluate Plaintiff's specific needs. As such, the Court finds Claim 1 insufficient to proceed against Barwick, Hughes, or Jane Doe healthcare administrator.

In Claim 2, Plaintiff faults Defendants Ranson, Spencer, Lt. Little, and John Doe officers for engaging in a course of excessive force on June 25, 2025. An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37

(2010).  Specifically, he claims Ranson made him walk back to his cell after falling from the top bunk, pepper sprayed him gratuitously, physically battered him, and then directed the John Doe officers and Spencer to apply handcuffs in a painful fashion.  He further alleges the John Doe officers wheeled him about the prison in a manner that caused serious abrasions to his arms, while laughing, and Lt. Little participated in the same conduct with the wheelchair.  The Court initially considered the allegations against Ranson and found they did not state a claim in earlier pleadings because at the time Plaintiff's allegation essentially centered on the use of mace, and attached disciplinary reports stated a short burst of mace was used to gain compliance.

The second amended complaint now contains a significantly enhanced version of events, claiming essentially that Plaintiff was paraded around the prison grounds and battered for at least an hour.  Though the Court has serious doubts about the veracity of these allegations relative to the earlier pleadings, if true, these allegations *may* support an excessive force or failure to intervene against the defendants.  Section 1983 liability requires a showing of personal involvement, and the barebones allegation that one or more defendants caused harm is not enough to proceed. *See Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009).  The Court previously informed Plaintiff in this case that if he wished to proceed against groups of individuals, he would need to say how many individuals were present and what roles each person played in the alleged harm.  Plaintiff has not met this threshold when it comes to Defendants Spencer, Lt. Little, or the John Doe officers.  He alleges in group fashion that these individuals paraded him around, placed and used restraints in a painful manner, and laughed and joked about his plight, but his

assertions are not sufficiently particularized to know how many John Doe officers participated, or what Spencer or Little personally did. Without more information, Plaintiff may not proceed on Claim 2 against Defendants Spencer, Little, or the John Doe officers. By contrast, Claim 2 may proceed against Defendant Ranson on the allegation that he used mace in a fashion designed to cause pain and suffering, hit Plaintiff's head on a door or objects causing injury, and directed or participated in the activities with restraints and the wheelchair that allegedly caused significant injuries.

In Claim 3, Plaintiff faults Defendants Ranson, Lt. Little, Jane Doe seg nurses and the Jane Doe mental health nurse for refusing medical treatment for his injuries. The allegations against Little, the Jane Doe seg nurses, and Jane Doe mental health nurse are conclusory and do not provide enough detail about what they observed or knew and what role they played in denying care. By contrast, Plaintiff may proceed on Claim 3 solely against Defendant Ranson who allegedly caused multiple injuries and placed Plaintiff in a crazy cell to further deprive him of care.

Finally, in Claim 4 Plaintiff faults Defendants Ranson and Little for participating in inappropriate discipline linked to these incidents that deprived him of his right to due process. To establish a due process violation, Plaintiff would need to provide further information about the discipline, the process afforded, and the punishment he received. Without any such detail, the Court cannot assess if a liberty interest was invoked, or if Plaintiff was deprived of the appropriate due process protections. Thus, Claim 4 is dismissed as insufficiently pled.

**MOTION FOR EMERGENCY RELIEF**

Plaintiff has filed a motion for emergency relief wherein he alleges that on July 21, 2026, Ranson, Spencer, Smith, and unknown officers performed a cell search. (Doc. 18 at 1). He alleges that after the cell was searched officers returned and told him to cuff up, and they took him to the internal affairs office. He alleges that while at the office he was repeatedly told to drop the grievances and reports involved with the "Galloway SMY cases." (*Id.*). Plaintiff alleges that he refused and was placed in a filthy cell. (*Id.* at 3). He claims that he needs a transfer before he dies at the hands of prison officials. (*Id.*).

The Court has repeatedly explained to Plaintiff Tatum that he can only seek injunctive relief if it is connected to the claims and parties in the operative complaint. *See e.g., Tatum v. Hunter,* Case No. 22-2411 (S.D. Ill. 2023) (Doc. 16) (denying injunctive relief, including a request for a transfer, where the injunctive relief sought was not narrowly tailored and did not align with the claims in the case) *aff'd in Tatum v. Hunter*, Case No. 23-2253 (7th Cir. May 16, 2024); *Daniels v. Dumsdorff, et al.*, Case No. 19-cv-394 (S.D. Ill. 2019). Here, the sole connection between this Motion (Doc. 18) and the operative complaint (Doc. 15) is the mention of defendants Ranson and Spencer. As explained above, Plaintiff is proceeding solely on a claim against Defendant Ranson alleging excessive force and the denial of medical care on June 25, 2025. The new allegations in Plaintiff's Motion have no relationship to the excessive force or deliberate indifference claims, so there is not a proper basis for injunctive relief.

**MOTION FOR RECRUITMENT OF COUNSEL**

Plaintiff has filed a Motion for Recruitment of Counsel wherein he indicates that ongoing retaliation, his conditions of confinement, and his physical and mental health are making it difficult for him to proceed in this case and others. (Doc. 17). Plaintiff attached a letter from one practitioner declining to take his case. (Doc. 17 at 6). When confronted with a request under § 1915(e)(1) for recruited counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? *Pruitt v. Mote*, 503 F.3d 647, 654–55 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citations omitted). The Court generally requires proof of at least three efforts to secure counsel. In this case, Plaintiff filed a motion bearing numerous case numbers, so it is not even clear if the letter of declination pertains to the facts in this case or if it relates to the facts Plaintiff is presenting in other cases currently in litigation. As such, the Court is not yet satisfied that Plaintiff has demonstrated a reasonable effort to secure his own counsel. A new motion must be accompanied by proof that Plaintiff contacted at least 3 attorneys or entities for representation in this specific case.

It is also worth noting that Plaintiff has litigated several cases before the undersigned, and he has adequately represented his own interests, including filing extensive written material and participating in a *Pavey* hearing. Against this backdrop, the Court is confident that Plaintiff has the requisite skills to represent his own interests in the early phases of this case.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 2-3** may proceed against Defendant Ranson. By contrast, **Claims 1 and 4** are dismissed without prejudice, and **Claims 2 and 3 are dismissed without prejudice** against Defendants Spencer, Lt. Little, John Doe officers, Jane Doe seg nurses, and Jane Doe mental health nurse. The Clerk of Court shall **TERMINATE** Defendants Barwick, Hughes, John Doe healthcare administrator, Spencer, John Doe officers, Jane Doe mental health nurse, Jane Doe seg nurse, and Lt. Little, because Plaintiff has failed to plead an adequate claim against these parties.

The Clerk of Court is **DIRECTED** to prepare for Defendant Ranson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 15), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Status (Doc. 16) is **GRANTED** by the issuance of this Order, his Motion for Recruitment of Counsel (Doc. 17) is **DENIED** without prejudice, and his Motion for Emergency Relief (Doc. 18) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** August 4, 2026

_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.